ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona

KATHERINE R. BRANCH
Assistant U.S. Attorney
Arizona State Bar No. 025128
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona  85004-4408
Telephone:  602-514-7500
Facsimile:  602-514-7760
Email: Katherine.Branch@usdoj.gov
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CIV- |
|---|---|
| Plaintiff, | |
| vs. | **COMPLAINT FOR INJUNCTIVE RELIEF** |
| Louis Jarges Akrawi, | |
| Defendant. | |

Plaintiff, United States of America (the Government), asks this Court to issue an Order permitting the Department of Homeland Security ("DHS"), through its component agencies, Immigration and Customs Enforcement ("ICE") and the Public Health Service, Division of Immigration Health Services Corps ("IHSC") and their contracted medical provider CoreCivic, to forcibly monitor and to forcibly administer food and nutritional supplements to Defendant Louis Jarges Akrawi.  The United States will seek to vacate the Order as soon as it can confirm that Defendant accepts medical monitoring, and consumes food and fluids.

**PARTIES**

1.      Plaintiff is the United States of America.

2.      Defendant is Louis Jarges Akrawi ("Akrawi" or "Defendant"), and a native and citizen of Iraq.

**JURISDICTION AND VENUE**

3.     This Court has jurisdiction over this suit pursuant to 28 U.S.C. § 1345 (United States as plaintiff), 8 U.S.C. § 1329 (suits by the United States under the Immigration and Nationality Act (INA)), and 28 U.S.C. § 1651 (the All Writs Act). Pursuant to Fed. R. Civ. P. 65(a), this Court has jurisdiction to issue temporary restraining orders and injunctions.

4.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District, in and near the Florence Correctional Center ("FCC"), Florence, Arizona.

**FACTS**

5.     Akrawi is subject to a final order of deportation entered on March 24, 2009.

6.     Akrawi did not appeal his removal order, and has not sought to reopen his removal proceedings.

7.     Akrawi was not represented in his removal proceedings, and upon information and belief, Akrawi is not currently represented by counsel.

8.     Akrawi was detained by ICE officials in or near Detroit, Michigan, on or about May 22, 2017.

9.     On June 15, 2017, the American Civil Liberties Union filed a class action habeas petition in the District Court for the Eastern District of Michigan seeking to enjoin ICE from removing approximately 100 Iraqi nationals who had been detained by ICE officials in Detroit, Michigan.  That lawsuit is captioned *Hamama, et al. v. Adducci*, No. 17-cv-11910 (E.D. Mich.).

10.     Although Defendant was not a named petitioner, Defendant is a member of the class, which is defined as "all Iraqi nationals within the jurisdiction of the Detroit ICE Field Office, with final orders of removal, who have been, or will be, arrested and detained by ICE as a result of Iraq's recent decision to issue travel documents to facilitate U.S. removals."  Habeas Pet. (Doc. 1) in *Hamama* at ¶ 43.

11.     Subsequent to the filing of the habeas petition in *Hamama*, Defendant was

transferred from Michigan to the FCC in advance of his anticipated removal from the United States.

12. On June 22, 2017, Hon. Mark A. Goldsmith entered a temporary restraining order in the *Hamama* litigation, temporarily restraining the United States from removing the class members, including those who had been transferred outside of Michigan to immigration detention facilities in other states. *See Hamama*, No. 17-cv-11910 (E.D. Mich. June 22, 2017) (Doc. 32).

13. On June 26, 2017, Judge Goldsmith granted the *Hamama* petitioners' request to expand the order staying removal to protect a nationwide class of Iraqi nationals. *Hamama*, No. 17-cv-11910 (E.D. Mich. June 22, 2017) (Doc. 43). The temporary restraining order was set to expire on July 10, 2017, unless otherwise ordered by the court. *Id*.

14. On July 6, 2017, Judge Goldsmith extended the temporary restraining order in *Hamama* to 11:59 p.m. on July 24, 2017. *Id*. at Doc. 61.

15. On June 30, 2017, Akrawi began a hunger strike, refusing food, water and his prescription medications for hypothyroidism and hypertension.

16. Akrawi's stated reason for his hunger strike is to protest his housing unit assignment. Akrawi would like to be housed with the other Iraqis detained at the FCC.

17. Serious security concerns prevent Akrawi from being housed with the other Iraqi detainees.

18. On July 5, 2017, at approximately 1:40 a.m., Akrawi accepted some ice chips from the medical staff at the FCC, and on the evening of July 6, 2017, drank eight (8) ounces of water, but otherwise has had no food, water, or medication since June 30, 2017.

19. Until the morning of July 6, 2017, Akrawi had been permitting the medical staff at the FCC to monitor his vitals, and to draw his blood and collect his urine for analysis.

20. Since the morning of July 6, 2017, Akrawi has not allowed the medical staff at the FCC to assess his weight or blood pressure, or collect blood or urine for analysis.

Such information is necessary to accurately monitor Akrawi's condition.

21.     As a result of Akrawi's refusal to take any nutrients, he lost eleven (11) pounds between June 28 and the evening of July 5, 2017, the last time he allowed medical staff to ascertain his weight.  The 11-pound weight loss represents 4.7% of his total body weight.

22.     The medical literature reflects that metabolic imbalance, caused by fasting, is likely to result in permanent bodily damage and/or death once weight loss reaches 18% of the patient's initial weight.

23.     The most recent analysis of Akrawi's urine was performed on July 5, 2017 at approximately 9:00 p.m.

24.     The urine dip had a specific gravity of 1 with a PH of 5 and the presence of ketones, but was negative for blood, protein, leukocytes, nitrate, bilirubin, and glucose.

25.     On July 6, 2017, Akrawi was transported to Mercy Gilbert Hospital in Gilbert, Arizona to be evaluated for dehydration at the recommendation of the FCC medical staff.

26.     At Mercy Gilbert Hospital, Akrawi refused all treatment and evaluation, and was transported back to the FCC.

27.     Unless Akrawi is significantly hydrated and nourished in the near future, his immediate and permanent health will be at risk.  Specifically, he will be in danger of metabolic acidosis and life-threatening dehydration, which can lead to organ damage and decreases access to peripheral veins, which would be critical should Akrawi reverse his hunger strike since this is how fluids would be rapidly provided to him.

28.     Akrawi's hypertension and hypothyroidism can also be exacerbated by dehydration.

29.     If Akrawi continues his hunger strike, his deterioration will reach the point where immediate medical intervention will be necessary to prevent permanent injury or death.

30.     At that point, intravenous infusion of liquids, including electrolytes,

multivitamins, glucose, and potassium, will be immediately necessary to prevent dehydration.

31.     Without medical monitoring of Akrawi's vital signs and weight, and laboratory testing of his blood and urine, the medical staff at the FCC have no way to accurately assess the degree to which Akrawi's condition has deteriorated.

32.     The decline in Akrawi's health and well-being, brought on by his refusal to eat or drink, poses a serious threat to the security and good order of the FCC.

33.     Akrawi has been repeatedly counseled on the dangers of self-imposed dehydration and the effects of starvation on his body.

34.     Akrawi was also counseled about involuntary hydration and feeding procedures to prevent injury and/or death should he continue to refuse food and water.

35.     Based on Akrawi's current physical condition and the inability to monitor his medical status and condition, Dr. Graham's informed medical opinion is that involuntary medical and laboratory monitoring are necessary.  Based upon the results of such monitoring, involuntary hydration and feeding measures may become necessary.

## CAUSE OF ACTION

36.     The Secretary of the U.S. Department of Homeland Security, through ICE, is authorized to provide medical treatment to aliens who require treatment during removal proceedings.  8 U.S.C. § 1231(f); 8 C.F.R. § 241.2(a).  Moreover, the alien's First Amendment right of expression is not violated through force-feeding because there is a valid rational connection between the force-feeding and the legitimate government interest in preserving life and for the maintenance of security and orderly institutional operations. *See In re Nabil Ahmed Soliman*, 134 F. Supp. 2d 1238, 1253 (N.D. Ala. 2001); *In re Abdel Fattah*, No. 3:08-MC-164, 2008 WL 2704541 (M.D. Pa. July 8, 2008).

## PRAYER FOR RELIEF

WHEREFORE, the United States requests:

a.     That the Court issue an Order permitting the medical staff at the Florence Correctional Center (or any outside hospital to which Akrawi may be transported) to

conduct involuntary medical monitoring of Akrawi, to include obtaining his weight and vital signs, and to collect blood and urine samples upon which laboratory tests can be conducted.

b.      That the Court issue an Order permitting suitably-trained medical professionals to take all steps medically necessary to sustain Defendant's life and maintain his well-being by feeding and hydrating him without his consent, and using sedation to effectuate these processes when and if it becomes necessary in order to prevent his permanent injury and/or death;

c.      That the Court set this matter for hearing so that the rights of the Defendant to refuse medical monitoring and nourishment can be determined; and

d.      For such other relief as the Court deems appropriate.

Respectfully submitted this 7th day of July, 2017.

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona

*s/Katherine R. Branch*
KATHERINE R. BRANCH
Assistant U.S. Attorney

6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of July, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and arranged for hand-delivery of a copy of the document to the following recipient who is not a CM/ECF registrant:

Louis Jarges Akrawi #A018-935-864
Florence Correctional Center
1100 Bowling Road
Florence, Arizona  85133
Defendant

   *s/Cindy Perez*
U.S. Attorney's Office