**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV-17-02192-PHX-DGC |
| Plaintiff, | **TEMPORARY RESTRAINING ORDER** |
| v. | |
| Louis Jarges Akrawi, | |
| Defendant. | |

Louis Jarges Akrawi, a government detainee, has been on a hunger strike since June 30, 2017. The government seeks a temporary restraining order ("TRO") allowing it to involuntarily monitor his vital signs and, if necessary, administer food, fluids, and nutritional support. Docs. 1, 2.

*Ex parte* temporary restraining orders are "necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974). The standard for issuing a TRO is the same as that for issuing a preliminary injunction. *Brown Jordan Int'l, Inc. v. The Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Haw. 2007)). A plaintiff must show that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable injury without an injunction, (3) the balance of equities tips in its favor, and

(4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Forced feeding and medical treatment can impinge on a detainee's constitutionally protected liberty interests. *See Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 278 (1990); *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). A government action that impinges on a detainee's constitutional rights is "valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Four factors should be considered when determining the validity of such an action: (1) whether there is a valid, rational connection between the government action and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to the detainee; (3) the impact the accommodation of the asserted constitutional right will have on guards and other inmates; and (4) whether there are ready alternatives. *Id.* at 90.

The government has identified two interests in this case: (1) providing nutritional and medical care in order to preserve the lives and prevent suicidal acts of those in its care; and (2) maintaining security and discipline in the prison. Doc. 2 at 8-9. These interests are widely recognized as legitimate. *See Aamer*, 742 F.3d at 10 (collecting cases). As a result, most courts have found these interests sufficient to justify the forced feeding and hydration of a detainee under the test set forth above. *See Id.; Grand Jury Subpoena John Doe v. United States*, 150 F.3d 170, 172 (2d Cir. 1998) ("like the majority of courts that have considered the question, [we] hold that [a district court's forced-feeding order] does not violate a hunger-striking prisoner's constitutional rights"); *Martinez v. Turner*, 877 F.2d 421, 423 (8th Cir 1992), *cert denied*, 507 U.S. 1009 (1993) ("The mere allegation of forced-feeding does not describe a constitutional violation" where medical officers determined that it was necessary to the inmate's health).[1]

---

[1] Federal regulations provide that when a hunger-striking inmate refuses to voluntarily accept treatment despite counseling encouraging him to do so, a "physician may order that treatment be administered without the consent of the inmate." 28 C.F.R. § 549.65.

According to the government's complaint, Akrawi began his hunger strike at the Florence Correctional Center on June 30, 2017. Doc. 1 at 2, 3, ¶¶ 4, 15. He has refused water, food, and his prescription medications for hypothyroidism and hypertension. *Id.* On July 5, 2017 he accepted some ice chips from medical staff and drank eight ounces of water, but has not otherwise taken water or food since June 30. *Id.* at 3, ¶ 18. He allowed medical staff to monitor his vital signs until July 6, but has since refused monitoring, even after being transported to Mercy Gilbert Hospital. *Id.* at 3, 4, ¶¶ 19-20, 26. As of July 5, Akrawi had lost 11 pounds, representing 4.7% of his total body weight. *Id.* at 4, ¶ 21. Permanent bodily damage or death is likely to result when weight loss reaches 18%. *Id.* at 4, ¶ 22. Because the government's medical staff is unable to monitor his vital signs, they are unable to determine if medical treatment is necessary to prevent serious harm or death. *Id.* at 5, ¶ 31. Medical staff have repeatedly counseled Akrawi about the dangers of refusing water and food, and have advised him of possible involuntary hydration and feeding procedures if he continues. Dr. Stephen Graham, one of the physicians at Florence charged with caring for detainees, has determined that involuntary medical and laboratory monitoring is necessary to protect Akrawi's health. *Id.* at 5, ¶ 35.

Considering the above allegations and legal standards, the Court finds that the government has satisfied the requirements for a TRO without notice and has shown that involuntary medical and laboratory monitoring are necessary to avoid serious bodily harm or death – results the government has a legitimate interest in avoiding. As a result, the government has shown a likelihood of success on the merits and of irreparable injury. The Court also finds that, in the circumstances of this emergency TRO request, the balance of equities and the public interest favor granting a TRO.

**IT IS ORDERED:**

1. The government, through competent medical practitioners, may involuntarily conduct medical monitoring of Akrawi, including obtaining daily weight, vital signs, and urine and blood samples.

2. Upon a determination from a qualified medical practitioner that immediate medical intervention is necessary to prevent permanent injury or death, the government, through competent medical practitioners, may involuntarily administer fluids, food, and nutritional support to Akrawi via placement of a nasogastric tube. The government may use sedation to effectuate these processes if necessary.

3. The Court will set a hearing regarding the continuation of this TRO and a possible preliminary injunction for Thursday July 13, 2017 at 10:00 a.m. In the meantime, the Court will endeavor to designate counsel for Akrawi.

Dated this 8th day of July, 2017.

_____
David G. Campbell
United States District Judge