1    Kathleen E. Brody (#026331)
     **ACLU FOUNDATION OF ARIZONA**
2    3707 North 7th Street, Suite 235
     Phoenix, Arizona 85013
3    Telephone: (602) 650-1854
     Email: kbrody@acluaz.org
4
     Daniel C. Barr (#010149)
5    DBarr@perkinscoie.com
     Sambo Dul (#030313)
6    SDul@perkinscoie.com
     Christopher D. Thomas (#010482)
7    CThomas@perkinscoie.com
     PERKINS COIE LLP
8    2901 North Central Avenue, Suite 2000
     Phoenix, Arizona  85012-2788
9    Telephone:  602.351.8000
     Facsimile:  602.648.7000
10   DocketPHX@perkinscoie.com

11   Attorneys for Defendant Louis Jarges Akrawi

12

13                UNITED STATES DISTRICT COURT

14                     DISTRICT OF ARIZONA

15   United States of America,              No. 17-cv-02192-PHX-DGC

16                    Plaintiff,            **DEFENDANT'S MEMORANDUM
                                            IN PARTIAL OPPOSITION TO
17        v.                                PLAINTIFF'S MOTION FOR
                                            TELEPHONIC APPEARANCE
18   Louis Jarges Akrawi,                   AND IN SUPPORT OF
                                            DEFENDANT'S PETITION FOR
19                    Defendant.            WRIT OF HABEAS CORPUS AD
                                            TESTIFICANDUM**
20

21        On July 7, 2017, Plaintiff initiated this action and filed a motion for a temporary

22   restraining order ("TRO"), seeking to "sustain Defendant's life and maintain his well-

23   being by feeding and hydrating him without his consent" while Defendant is housed at

24   Plaintiff's Immigration and Customs Enforcement detention facility located in Florence,

25   Arizona.  Doc. 1 (Complaint) at 6.  This Court set a TRO hearing for July 13, 2017.

26        Plaintiff now seeks to deny Defendant's in-person participation in his own hearing,

27   asking this court instead to limit Defendant to a telephonic appearance.  In doing so,

28

Plaintiff fails to demonstrate "good cause in compelling circumstances", as is required by Fed. R. Civ. P. 43(a).[1]  Defendant opposes Plaintiff's motion as it applies to his own appearance in court.  Plaintiff instead should be ordered, pursuant to Defendant's *Petition for Writ of Habeas Corpus ad Testifanduma* and pursuant to 28 U.S.C.§ 2241(c)(5) to deliver Defendant to the District Court in Phoenix for the scheduled 10:00 a.m. hearing on July 13, 2017.

District Courts are empowered to issue a writ of *habeas corpus ad testificandum*, directing a custodian of a prisoner to produce the prisoner for appearance as a witness in court.  28 U.S.C. § 2241(c)(5); 28 U.S.C. § 1651(a).  This is especially true where, as here, the incarcerated witness is one of the parties.  *Latiolais v. Whitley,* 93 F.3d 205, 208 (5th Cir. 1996) (finding that the district court violated concepts of "fundamental fairness" in refusing to allow the prisoner/plaintiff to testify in person during the trial of his own civil lawsuit).

In exercising its discretion to issue a writ of *habeas corpus ad testificandum,* District Courts are guided by various factors such as "whether the prisoner's presence will substantially further the resolution of the case, the security risks presented by the prisoner's presence, the expense of the prisoner's transportation and safekeeping, and whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted."  *Ballard v. Spradley*, 557 F.2d 476, 480 (5th Cir. 1977).  *See also Wiggins v. Alameda County*, 717 F.2d 466, n. 1 (9th Cir. 1983) (adopting the *Ballard* balancing test approach for such cases within the Ninth Circuit).

Defendant's physical presence will unquestionably further the resolution of the case, as Plaintiff initiated this action precisely due to purported concerns about Defendant's physical wellbeing and physical vitality.  Doc. 2 at 9 ("Akrawi's behavior is . . . risking his permanent health and possibly his life.").

---

[1] Plaintiff also moves for telephonic appearance by two non-party witnesses: Dr. Graham and Mr. Ameida.  Defendant does not oppose Plaintiff's motion to the extent it applies to these two non-party witnesses.

According to Plaintiff's own legal analysis, the forced feeding procedures it seeks to conduct on Defendant may be permitted only if and when "they determine that the inmate's life or permanent health is in danger." Doc. 2 at 9. Indeed, the Court's *ex parte* TRO did just that. Doc. 6. While a visual assessment of the inmate alone is likely not dispositive, the Court may rely, in part, upon its own visual assessment of Defendant's physical appearance in open court. Indeed, this case presents one of those rare instances in which a witness' physical appearance may speak louder than his words. While many litigants may desire a witness to present himself in open court so that the factfinder may better assess his credibility, this case presents a situation where the witness' appearance may be instructive. By raising Defendant's health as a central element of this case, Plaintiff has made relevant his appearance of frailty or vitality.

Plaintiffs have sought to upend the traditional default rule that "the witnesses' testimony must be taken in open court", Fed. R. Civ. P. 43(a), without any particularized showing that Defendant's appearance in Court or his transportation to and from Court will present a security risk. Since Plaintiff contends that Mr. Akrawi is excessively weak from hunger and previously transported him to Mercy Gilbert Hospital, that is perhaps not a surprise that Plaintiff makes no argument about security concerns. In its motion for telephonic appearances, Plaintiff merely mentions – almost as an afterthought – that "Plaintiff's counsel intended to arrange for Defendant Akrawi to attend the hearing telephonically, since no writ has issued[.]" Doc. 9 at 4. Further, Plaintiff filed its motion shortly after its counsel was initially contacted by counsel for Defendant, who appeared in this matter less than 24 hours ago. It appears the motion was filed without counsel for Plaintiff even inquiring of Plaintiff whether there was any logistical impediment to Mr. Akrawi's personal attendance. Conversely, Defendant has sought this relief within 24 hours of learning from Plaintiff that it did not intend to produce Defendant in person.

In Plaintiff's Complaint and Motion for TRO, there is only a vague and unsubstantiated mention of "serious security concerns" related to Defendant's being housed along with other immigration detainees. Doc. 1 at ¶ 17; Doc. 2 at 2. This is far

1    from a "*showing* that transporting [witness] pose[s] both an expense to the government as
2    well as a security risk[.]" *Perotti v. Quinones*, 790 F.3d 712, 725 (7th Cir. 2015)
3    (emphasis added).

4         Accepting Plaintiff's distance measurements, Doc. 9 at 3, the cost of transporting
5    Defendant the 65 miles each way from Florence to Phoenix pales in comparison to the
6    cost the United States recently incurred in transporting Defendant the 2,000 miles from his
7    place of apprehension to Arizona.  Doc. 1 (Complaint) at ¶ 8 ("Akrawi was detained by
8    ICE officials in or near Detroit, Michigan, on or about May 22, 2017.");  Id. at ¶ 11
9    ("Defendant was transferred from Michigan to the FCC in advance of his anticipated
10   removal from the United States.").  At the current federal standard mileage rate of 53.5
11   cents per mile, the roundtrip travel expense for Mr. Akrawi's day in court will arrive to
12   approximately $69 plus the cost of personnel.  Courts are more likely to grant a writ for
13   *habeas corpus ad testificandum* where, like here, the detention facility is "not particularly
14   distant" from the courthouse and where the court proceeding is quite brief.  *Hawks v.*
15   *Timms*, 35 F. Supp. 2d 464 (D. Md. 1999) (ordering the government to pay for the
16   transportation of the incarcerated witness where the witness was housed approximately
17   140 miles from the courthouse and the trial expected to last three days).

18        Here, the trip will be made in one day and will not require overnight
19   accommodations in another facility.  Indeed, the U.S. District Court for the District of
20   Arizona just yesterday issued a similar writ in another civil matter in which the
21   government was ordered to transport an incarcerated witness from Florence to Phoenix for
22   a one-day hearing.  *Parsons, et. al. v. Ryan*, et. al., 2:12-cv-0601-DKD, Doc. 2156
23   (July 10, 2017).  In short, the travel costs are negligible.  *See, e.g., Twitty v. Ashcroft*, 712
24   F. Supp. 2d 30, 31 (D. Conn. 2009) (denying request for habeas corpus ad testificandum
25   where the estimated cost was $70,000 to transport the prisoner from Colorado to
26   Connecticut); *Thomas v. O'Brien*, 2011 WL 5452012, at *5 (N.D.N.Y. Nov. 8, 2011)
27   (denying motion for habeas corpus ad testificandum where estimated transportation cost
28   was $9,800).

1    Due to the time sensitivity of this matter and the unique circumstances surrounding

2    Defendant's detention, a stay of this matter is not a practical workaround.  Due to the

3    urgency of the matter, this Court issued its *ex parte* TRO within 24 hours of the initiation

4    of this action and set its first hearing for this Thursday.  Both parties appear to agree on

5    the urgency of this matter.  Doc. 1 (Complaint) at ¶ 27 ("Unless Akrawi is significantly

6    hydrated and nourished in the near future, his immediate and permanent health will be at

7    risk.")  Furthermore, the length of Defendant's detention is unpredictable at this moment.

8    Unlike a criminal inmate, Defendant is currently being held "in advance of his anticipated

9    removal from the United States."  Doc. 1 at 3.  At this moment, there is no date certain for

10   his removal, indicating that Defendant could potentially be detained for the next several

11   months.

12                                    **CONCLUSION**

13   Defendant respectfully requests that that this Court deny Plaintiff's Motion for

14   Telephonic Appearance during the scheduled July 13, 2017 evidentiary hearing to the

15   extent such motion applies to Defendant's own court appearance and requests further that

16   the Court grant Defendant's *Petition for Writ of Habeas Corpus ad Testificandum* to allow

17   Defendant the opportunity to testify in person, if called upon, and to observe the

18   proceeding in person.

1    Dated:  July 11, 2017            **PERKINS COIE LLP**

2

3                                By:  s/ Christopher D. Thomas

4                                 Kathleen E. Brody (#026331)
                                **ACLU FOUNDATION OF ARIZONA**

5                                 3707 North 7th Street, Suite 235
                                Phoenix, Arizona 85013

6                                 Telephone: (602) 650-1854

7                                 Daniel C. Barr (#010149)
                                Sambo Dul (#030313)

8                                 SDul@perkinscoie.com
                                Christopher D. Thomas (#010482)

9                                 CThomas@perkinscoie.com
                                2901 North Central Avenue, Suite 2000

10                               Phoenix, Arizona  85012-2788

11                       Attorneys for Defendant Louis Jarges Akrawi

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

☒      I hereby certify that on July 11, 2017, I electronically filed the foregoing with the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to CM/ECF registrant Katherine R. Branch, Katherine.Branch@usdoj.gov, and emailed a copy to:

Kathleen Erin Brody
kbrody@acluaz.org

Billy Peard
bpeard@acluaz.org

Carl Takei
ctakei@aclu.org

Victoria Lopez
vlopez@aclu.org

David Faith
dfaith@aclu.org

s/      Marla Mercier